AO 91 (Rev. 10/95) Criminal Complaint

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FILED AUG 16 2013
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

UNITED STATES OF AMERICA
v.
KIA MOORE

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 2:13-MJ-0256 — DAD

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In the Eastern District of California, and elsewhere, defendant did,

- between a date unknown to the United States, but no later than April 5, 2013, and June 17, 2013, in or affecting interstate commerce, knowingly recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, to wit: a 16-year-old female identified as "Juvenile Victim 1," knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act; and

- between a date unknown to the United States, but no later than April 5, 2013, and June 17, 2013, in or affecting interstate commerce, knowingly recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, to wit: a 16-year-old female identified as "Juvenile Victim 1," knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act;

in violation of **Title 18, United States Code, Sections 1591(a)(1) and 1591(a)(2)**. I further state that I am a Special Agent, Federal Bureau of Investigation, assigned to the Sacramento Innocence Lost Task Force, and that this complaint is based on the following facts:

- **See Attached Affidavit**

**X** Continued on the attached sheet and made a part hereof.

Signature of Complainant GABRIELA BETANCE
Special Agent, FBI
Sacramento IL Task Force

Sworn to before me, and subscribed in my presence
August 16, 2013                    at    Sacramento, California
Date                                     City and State

DALE A. DROZD
United States Magistrate Judge
Name and Title of Judicial Officer        Signature of Judicial Officer

# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO, CALIFORNIA

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Gabriela Betance, being duly sworn, depose and state:

1. I am a Federal Bureau of Investigation (FBI) Special Agent (SA) currently assigned to the Sacramento Field Office and have been employed by the FBI since 1996, as a Language Specialist, Financial Analyst, and as a SA since August, 2008. As a FBI SA, I am currently assigned to the Innocence Lost Task Force and am authorized to investigate crimes involving the sexual exploitation of children and adults and other federal crimes. I have conducted and participated in numerous investigations of criminal activity, specifically financial crimes, and more recently cases involving juvenile and adult prostitution and the sex trafficking of children, or by force, fraud, and coercion. I have also consulted with other law enforcement officers who have experience in cases involving Crimes Against Children.

2. As a FBI Special Agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. This affidavit is submitted in support of an arrest warrant for KIA MOORE, date of birth (DOB) December 8, 1985, 7913 Orchard Drive, Sacramento, California 95828; and SHARON KING, DOB May 6, 1983, 4907 Spica Parkway, Sacramento, California 95823. As explained in more detail below, I believe that there exists probable cause to believe that KIA MOORE and SHARON KING have engaged in the sex trafficking of minor, or by force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a)(1), and participated in a sex trafficking venture in violation of 18 U.S.C. § 1591(a)(2).

4. The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports, other FBI agents, and on my own investigation of this matter. Since this affidavit is being submitted for the limited

1

purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause to believe that there have been violations of 18 U.S.C. §§ 1591(a)(1) and (a)(2), and that the individuals identified in this affidavit have committed them.

## STATUTORY AUTHORITY

5. This investigation concerns violations of:

    a. 18 U.S.C. § 1591(a)(1), which makes it a crime to knowingly, in or affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, or to benefit financially or by receiving anything of value, from participation in a venture which has recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person, knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act; and

    b. 18 U.S.C. § 1591(a)(2), which makes it a crime to knowingly, in or affecting interstate commerce, benefit financially or by receiving anything of value, from participation in a venture which has recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person, knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

///
///
///

2

## BACKGROUND ON PROSTITUTION

6. Through my training and experience, I am aware of the following traits of prostitution and how the Internet, computer, and cell phones are used to further the activities of illegal prostitution:

   a. Individuals who through enticement, intimidation, or force enlist individuals to become prostitutes, and who profit from the prostitution of others, are called "pimps." Pimps are sometimes euphemistically referred to as "management." Pimps can be either male or female.

   b. Pimps, prostitutes who work for pimps, and prostitutes who are not "managed," have embraced the Internet as a means of advertising services and communicating with customers. To this end, certain web sites have been created to facilitate communications between prostitutes and their clients. The more notable web sites relevant to prostitution in the Eastern District of California include "Myredbook.com" (also called "myredbook" or "redbook"), and the "Adult Services" section of "Backpage.com." These web sites allow pictures to be posted as part of advertisements. I have viewed prostitution advertisements on each of these web sites. In addition, I have viewed prostitution advertisements on these websites of females I later confirmed to be minors.

   c. Advertisements for prostitutes often contain codes for the services provided. For example the term "w4m" means women for men. The term "in-calls only" mean that the prostitute will be providing the location for the sexual transaction. In contrast, an "out-call" means that the prostitute will travel to meet the customer. The term "donation" is often used to mean the cost for the sexual transaction. Advertisements will often contain a phone number for prospective dates to contact.

   d. Pimps will often use prostitution web sites because of their ability to target multiple customers with little or no cost. In addition, the Internet provides a level of anonymity to a pimp, and also allows him to manage the women who work for

him remotely.

e. I know that computers and Internet-capable cellular phones (also known as smart phones) have become an integral part of the prostitution industry. Pimps and the women who work for them will use computers and smart phones to post and update prostitution-related advertisements. Pimps and prostitutes use personal e-mail accounts accessed through the internet to post their advertisements on prostitution web sites. They will also use cellular and smart phones equipped with cameras to take photographs which are then used in the online advertisements; these photographs are sometimes sent between pimps and prostitutes prior to or after they are used in advertisements. Computers and smart phones may also be used to send and receive emails, text or instant messages, or phone calls from prospective customers. Prospective customers are sometimes referred to as a "john," or "date." Computers, smart phones, cellular phones, and other digital devices will also be used by pimps and prostitutes to communicate with each other, as well as to communicate with others who may not be pimps or prostitutes, but who may have some connection with the prostitution sub-culture.

f. I am also aware that when phone calls are made and received and text messages sent and received, the cellular tower that the phone is operating from is recorded by the wireless phone company. The phone tower pin points the general location that the cellular phone is close to.

g. Subjects who utilize the internet to post prostitution related advertisements on websites such as "myredbook.com" often use photographs in the advertisements. These photographs often show a nude or semi-nude female.

h. Most juvenile prostitutes have pimps. Prostitutes will often refuse to divulge the identity of their pimps to law enforcement. Most pimps often instruct the prostitutes on what to say and what not to say to law enforcement.

i. Prostitutes are instructed by the pimp on how to detect undercover officers. When

arranging "dates" with clients over the phone, prostitutes rarely discuss the details pertaining to the sexual acts that are to occur until they meet with the customer in person.

j. Pimps at times use physical force and/or fear to control prostitutes. They control the prostitutes' actions, and collect monies earned through acts of prostitution. The pimps facilitate the prostitution by transporting the prostitutes to locations where the prostitution occurs. The pimps, at times, transport prostitutes across state lines for the purpose of prostitution. Pimps often possess firearms to assist in protecting their prostitutes. These firearms may also be used to intimidate or control the women who work for the pimp.

k. Prostitutes and/or pimps may stay in motels/hotels while working. This includes prostitutes who are working locally, as well as those who travel to other cities. Often, these motels/hotels are located near major freeways or interstates, allowing easy access to potential customers. Due to their portability and the frequent availability of internet Wi-Fi access at many motels/hotels, laptop computers and Internet-capable smart phones are often used when pimps and prostitutes stay at motels/hotels in order to allow them to add and update online postings of prostitution-related advertisements. When they travel, prostitutes and pimps may use their personal cars, rental cars, airplane, or bus. The pimps may use utilize monies earned by their prostitutes to purchase food, lodging, clothing and other items.

l. In addition to the income earned from their prostitutes, pimps may also sell drugs to make money. Pimps may also provide drugs to the prostitutes that work for them in order to suppress their appetites and to assist with the demands of prostituting for long periods of time.

m. Whether male or female, the term "daddy" or a similar paternal-type moniker such as "Poppa," is commonly used by prostitutes when referring to their pimps. The

pimp's phone number is often programmed into the prostitute's cell phone.

n. Pimps often request or force their prostitutes to obtain tattoos of names and/or symbols that are related to the pimp's name or nickname.

## BACKGROUND OF INVESTIGATION

<u>The January 2013 Arrest of Keon Nunnelly</u>

7. On January 13, 2013, Sacramento Police Department Patrol Officers Patterson and DeLeon conducted a vehicle stop on a green Lexus, California license plate 5AFY314, at 1955 Estrel Way, Sacramento, CA. The vehicle was stopped for expired registration in violation of Section 4000a of the California Vehicle Code. The driver was Keon Nunnelly (hereinafter "Nunnelly"). The front passenger was identified as 16-year-old female named "M.S." In Nunnelly's possession at the time of the stop was a red cellular phone.

8. Officers conducted a record check and learned that Nunnelly was on searchable parole with the California Department of Corrections and Rehabilitation (CDCR). Officers searched the red cellular phone and found the number to be 408-722-2137. Officers also located numerous text messages on this phone discussing prostitution. Officers conducted a record check on the phone number and located a prostitution ad on Myredbook.com. The photos accompanying the ad were of "M.S."

9. Officers spoke with "M.S." She said that the ad was made earlier in the day and that she does prostitute sometimes. "M.S." said that Nunnelly is not her pimp, and that the red cellular phone belonged to her.

10. Based upon the evidence recovered from the red cellular phone and the Myredbook.com advertisement, officers arrested Nunnelly for pimping and pandering; "M.S." was cited for prostitution and released. After the Sacramento County District Attorney's Office dismissed the pimping and pandering charges against Nunnelly, he remained in custody on a parole violation. He was released from custody on March 29, 2013.

11. While detained, Det. Kinney monitored Nunnelly's phone calls. He made numerous recorded phone calls to "M.S." and Kia Moore (hereinafter "Moore").

April 2013 Investigation of M.S.'s Myredbook advertisements

*Date with M.S.*

12. On April 8, 2013, Det. Kinney conducted a search on myredbook.com. Det. Kinney found a prostitution ad for "M.S." on Myredbook.com dated April 6, 2013. The ad had 5 photos of the minor victim dressed in white lingerie. The phone number associated with the ad was 408-722-3905.

13. On April 15, 2013, Det. Kinney searched in Myredbook.com for the phone number 408-722-3905. Det. Kinney was unable to locate this number, however, he did locate the phone number 408-<u>985</u>-3905. With this number was an advertisement for "M.S." dated April 14, 2013. The ad had 6 photos of the minor victim; four of the photos showed "M.S." dressed only in white underwear with her breasts exposed.

14. Det. Kinney texted 408-985-3905 and asked if the person depicted in the advertisements would be available for a date on April 16, 2013. Det. Kinney received a reply saying that she would, and also asking if Det. Kinney would be able to get a motel room. Det. Kinney told her that he could and asked to meet after 3 p.m.

15. On April 16, 2013, Det. Kinney texted 408-985-3905 and asked if she was still available. She advised she was. Det. Kinney went to a motel in Sacramento, CA, and rented a room. Sacramento Police Department Detective Stigerts was the undercover officer for the operation. Detective Stigerts began talking with the female with whom Det. Kinney had made a date, and directed her to room #107 of the motel.

16. At approximately 4:45 pm, the surveillance team for the operation observed a green Lexus, California license plate 5AFY314 park at across the street from the motel. This vehicle is registered to Keon Nunnelly at 8425 De Rosa Court, Sacramento, CA. The minor victim got out of the car and walked across the street to room #107 where she entered and agreed to an act of prostitution with Det. Stigerts. M.S. was

7

subsequently arrested. During a search of the minor victim incident to this arrest, a cell phone was located in her purse. The number for the phone was 408-985-3905.

17. Detective Stigerts conducted a search of this phone incident to arrest. On the phone was a video of Nunnelly and the minor victim engaged in oral and vaginal sex. The nature of the video made it clear that Nunnelly was aware that he was being recorded. The video starts out being recorded by the minor victim and then Nunnelly appears to take over the recording. This is apparent because of the fact that at times in the video, the view is from what would be Nunnelly's perspective and the minor victim's hands are both visible. The recording is approximately 6 minutes and 20 seconds.

*Sex Trafficking of M.S. by Moore*

18. The surveillance team contacted the driver of the Lexus and identified her as Moore. A record check of Moore showed her to be on state formal searchable probation. When Moore was contacted, she had a cell phone in her left hand. The number for the cell phone was 408-899-1256.

19. During a search of the saved contacts on this cell phone incident to arrest, a contact for "Sweet Juicey" was located. The number for this contact was 916-287-6592. As explained below, this phone number was later linked to Nunnelly. A picture of Nunnelly was associated with that saved contact.

<u>Investigation of Nunnelly as M.S.'s Pimp</u>

*Interviews with M.S. and Moore*

20. Det. Kinney contacted the minor victim in an interview room at the Sacramento Police Department. After waiving her <u>Miranda</u> rights, she said the following in summary:

   a. I am 16 years old. I am in the 10th grade. I was 15 when I first started working as a prostitute.

   b. I have not talked to or seen Nunnelly since we were last arrested together on

January 13, 2013.

c. I have "Keon" tattooed on my left upper breast. The only reason that I got it was because when I first met him I told him I was a completely different age. We were never boyfriend or girlfriend. We never had sex.

21. Detective Stigerts interviewed Moore. After waiving her <u>Miranda</u> rights, she said the following in summary:

a. I put up the ads of me on Myredbook.com just to see what would happen. I am not a prostitute.

b. I used to work as a prostitute a long time ago.

c. Nunnelly and I are boyfriend and girlfriend.

*Search of Nunnelly's Residence*

22. Members of the FBI Safe Streets Task Force went to the parole address of record for Nunnelly - 8425 De Rosa Court, Sacramento, CA. Nunnelly was not home but a search of his room was conducted pursuant to his parole conditions. During this search, a Dell laptop was seized. Also seized were a cell phone, paperwork for Nunnelly, and other indicia of prostitution, including handwritten text for ads, hand written notes for how to pose for photographs, and motel room keys, items that in my training and experience are consistent with prostitution. On one of the sheets of paper was written "Dazzle Bunny7" and "Daisylove". Both of these were names used by "M.S." in her Myredbook.com prostitution ads.

23. As a result of the prostitution activities, "M.S." was booked into the Sacramento County Juvenile Hall for prostitution; Moore was released. In addition, the CDCR issued a warrant for a parole violation on Nunnelly.

*Identification of King's Involvement in the Sex Trafficking of M.S.*

24. On April 17, 2013, Detective Stigerts and Det. Kinney began surveillance on 725 Howe Ave. #47, Sacramento, CA. Records check showed that Sharon King (hereinafter "King") lived at this residence and that she had visited Nunnelly while

9

he was last in custody. Records also showed that King had a 1995 BMW, California license plate 4FET404 registered to her. This vehicle was located in the parking lot of the apartment complex on Howe Ave. At approximately 1:15 p.m., Nunnelly and King were observed getting into the BMW and leaving the complex. The vehicle was followed until marked patrol units with the Sacramento Police Department could conduct a traffic stop. A stop was conducted at 12th Avenue and 33rd Street, Sacramento, CA. King was driving and Nunnelly was the front passenger. Nunnelly was taken into custody on his outstanding CDCR warrant. King was detained and found to be in possession of a cellular phone.

25. During a search of the vehicle, a second cellular phone was located in a purse. The phone number for the cell phone was 530-440-1773. King advised this was her phone and gave officers consent to search the phone. Detective Stigerts conducted a search of the saved contacts in this phone and located a contact titled "MY DADDY". The number associated with the contact was 916-287-6592. As explained above, this phone number was located on Moore' cell phone under the saved contact "Sweet Juicey", along with Nunnelly's photograph.

26. King was questioned about which phone was hers. She said that the phone found on her belonged to Moore. Detective Stigerts called 916-287-6592, the phone number previously associated with Nunnelly. As a result of this phone call from Det. Stigerts, the phone taken from King that she said belonged to Moore rang.

27. Pursuant to the terms and conditions of Nunnelly's parole, a parole search was conducted on this phone. In the saved contacts of this phone was a contact named "MY BITCH". The number for this contact was 530-440-1773. This number belonged to King. A photo of King was saved with the contact. A contact named "Lady Juice" was located with a number of 408-899-1256. This is the number belonging to Moore's cell phone (the cell phone in Moore's possession on April 16, 2013, when she was arrested after dropping off the Minor Victim at the Motel 6). A photo of Moore was

also saved with this contact. A contact named "Mrs Juice" was located with a number of 408-985-3905. As detailed above, this number belonged to "M.S." A picture of "M.S." was saved with the contact. In addition, several photos of "M.S." were located in Nunnelly's cell phone.

*Identification of Moore and King's Involvement in Prostitution*

28. A record check of cellular number 408-899-1256 (Moore's cell phone) in Myredbook.com showed a prostitution ad dated April 16, 2013. The ad had 6 photos of Moore.

29. A record check of cellular number 408-679-6063 in Myredbook.com showed a prostitution ad dated April 16, 2013. An unknown female is shown in the advertisement.

30. A record check of cellular number 916-287-6592 (King's cell phone) in my Myredbook.com showed an ad dated April 14, 2013. The ad had 5 photos of a female. The female in the ad was identified as King.

*Interview of Nunnelly*

31. Det. Kinney contacted Nunnelly in an interview room at the Sacramento Police Department. Nunnelly waived his <u>Miranda</u> rights and he said the following in summary:

    a. My birthday is June 16, 1984. I live at 8425 De Rosa Court.

    b. I have been pulled over two times with "M.S." in the car.

    c. When I first met "M.S." she lied about her age. We first met sometime back in July 2012. We were hanging out for 4 to 5 months before I found out anything about her.

    d. I found out that "M.S." was not 18 in November or December [2012]. I last saw "M.S." when I was arrested in January [2013]. We have talked. We have not had sex.

    e. I found out that she was 16 when I was pulled over in Dublin, CA.

f. When we first met we had sex. That was way before I knew her age.

g. We were boyfriend and girlfriend before I knew how old she was.

h. The 916-287-6592 number is mine. Moore gave it to me when I got home.

i. I didn't know "M.S." recorded our sex at first. Then she told me and that is when I grabbed the phone. I think it was filmed on the phone she has now.

j. I did not know that King had ads posted under my number. She did ask to use my phone.

*Review of Seized Cell Phones*

32. On June 5, 2013, Det. Kinney obtained a search warrant from the Honorable Dale A. Drozd authorizing the search of the cell phones seized in this case (five devices in total). During Det. Kinney's review of these cell phones, he located the following prostitution-related information:

   a. The following text messages were observed between Moore and Nunnelly

      i. Moore to Nunnelly: Well just to let you know that I got a date out in the pocket area (4/4/13)

      ii. Moore to Nunnelly: Dazzlebunny7-muhdis#2, Daisylove-jowmab#9 (4/5/13, Nunnelly, Myredbook username for "M.S.")

      iii. Moore to Nunnelly: I just had two dates and I just got done with one right now (4/7/13)

      iv. Moore to Nunnelly: I just had a date and I'm done with the date if you even look at ur phone and read this text message becausr when I call u don't puck up ur phone (4/7/13)

      v. Nunnelly to Moore: Blood post a add and quit worring bout dumb shit (4/8/13)

      vi. Nunnelly to Moore: Text me the address where u at im 5 mins away I took Sharon to a date (4/13/13)

      vii. Nunnelly to Moore: Fuck u bitch focus on getting money (4/15/13)

12

b. The following text messages were observed between King and Nunnelly
   i. King to Nunnelly: DADDY (4/6/13)
   ii. King to Nunnelly: DADDY perk up my pics are gonna be SUPER NICE ur gonna luv this outfit. IMA make a lot of $ (4/12/13)
   iii. Nunnelly to King: I know (4/12/13)
c. The following text messages were observed between the minor victim and Nunnelly
   i. Victim to Nunnelly: Daddie I tld him 200 n he said that's fine n he gone get a room for us but he's gonna call me in the morning but I arranged it for after 3 baby ok (4/15/13)
   ii. Victim to Nunnelly: Daddie (4/15/13)
   iii. Victim to Nunnelly: You can handle your business wit out me bcuz its always gonna b a problem so I'm done with this okay (4/15/13)
   iv. Nunnelly to Victim: Fuck all dat mmhhmmm shit, u know who real nigga, u better cum at me like my bitch, u fell me (4/15/13)

*Interview of King*

33. Detective Stigerts contacted King in an interview room at the Sacramento Police Department. King waived her <u>Miranda</u> rights and she stated the following in summary:
    a. I do not work as a prostitute. I sent those photos to Nunnelly and do not know how they ended up on the internet [Myredbook.com advertisement].
    b. Nunnelly and I have been friends for a long time.
34. King denied working as a prostitute even after Detective Stigerts showed her the photos of her located on Myredbook.com from the ad dated April 14, 2013.
35. "M.S.," Moore, and King all denied that Nunnelly is their pimp.

*Anaheim Police Department Operation*

36. On June 17, 2013, Det. Kinney was searching Myredbook.com looking for postings of

13

"M.S." Det. Kinney located an ad titled, "Two Horny Playmates Cum Freaks 100 Quicky Spe". The advertisement was for a 2 girl date. The number associated with the ad was 707-679-8645. The ad had 6 pictures associated with it. Det. Kinney was able to identify "M.S." in 5 of the photos. Det. Kinney was able to identify King in 5 of the photos. In 4 of the photos, the minor victim and King were posing together. The ad showed both females posing in a sexually suggestive manner with their bare breasts exposed. The ad was dated June 16, 2013, at 4:56 p.m. The advertised city was Anaheim, CA.

37. On June 17, 2013, Det. Kinney contacted VICE Sergeant Friesen with the Anaheim Police Department. Det. Kinney advised him that "M.S." is possibly posting on the Internet with King. Sergeant Friesen advised they would attempt to conduct an operation to recover M.S.

38. Anaheim Police Department Investigator Carringer began follow-up on the Myredbook ad and made contact with a female at 707-679-8645. The female who answered the ad agreed to meet for an act of prostitution. The female advised she was staying at the Quality Inn near Disneyland. Investigator Carringer told the female he would obtain a room for the date.

39. Other Investigators with the Anaheim Police Department began surveillance of the Quality Inn located at 1166 W. Katella Ave, Anaheim, CA. During the course of the surveillance, Investigator Brydges observed Nunnelly and King walking on the second story balcony of room 229.

40. Investigators later saw Nunnelly and King leave the Quality Inn in a white Infiniti SUV, CA license 6WNE604. The vehicle drove to the Travel Lodge (2060 S. Harbor Blvd, Anaheim, CA) where Investigators obtained a room for the date. King got out of the passenger seat of the vehicle. The vehicle left the parking lot driven by Nunnelly.

41. King entered room 116 and agreed to a sex act with Investigator Carringer for $190.

The bust signal was given and King was detained by the contact team. Nunnelly was followed away from the motel parking lot and stopped by marked units with the Anaheim Police Department. During a search of the vehicle, $1896 was located in the center console.

42. King told investigators that she was not a prostitute. She further told Investigators that she was staying with Moore.

43. Investigators confirmed with staff at the Quality Inn that King had in fact rented room 229. Investigators also confirmed that Moore was on searchable probation and had observed her on the balcony during the course of the surveillance.

44. Investigators knocked on the door of room 229 and received no response. Using a pass key, they entered the room. Located on the balcony was "M.S." Moore was eventually located in the parking lot to the west of the Quality Inn.

45. Investigator Panov briefly spoke with "M.S." in the motel room and she stated the following in summary:

   a. I have no resources so I work as a prostitute.
   b. I have worked as a prostitute for the last 3 or 4 months.
   c. I met Keon Nunnelly at a barbeque in Sacramento.
   d. Shortly after meeting Nunnelly, I, along with King and Moore, began working as prostitutes at the direction of Nunnelly. After I have completed dates, I have given the money to both Nunnelly and King.
   e. When I first met Nunnelly, I told him I was 18. A short time later I accidently told him my real age and he showed little reaction. After finding out my real age, I continued to work for him and give him the money I received.

46. Investigator Delgado contacted "M.S." at the VICE office and obtained the additional statement in summary:

   a. I have known Keon Nunnelly for the past year. We have had a relationship. I am the girl that he likes the most.

b. I am Nunnelly's bottom bitch, the one that will fight for the number one position.

c. I am doing prostitution with Nunnelly because I know when I turn 18 years old we will be able to have a legal relationship.

d. I have worked as a prostitute several times and given Nunnelly the proceeds.

e. I came to Anaheim so that I could make money working as a prostitute. Since arriving here, I have made a total of $400. King and Moore are also working to make money. The person in the Myredbook ad with me is King. We all came to Anaheim in a car rented by King.

f. I have made up to $50,000 working as a prostitute.

g. I met King about 7 months ago and she knows that I am 17 years old. She has taken me to 2 outcalls in Anaheim. On the last outcall I did, Nunnelly, King and Moore all took me. All three of them are aware of my age.

h. On dates, Nunnelly, King and Moore will provide security for me using their cell phones. On outcalls, I will call one of them and keep an open line so that if something happens they can help me.

i. I give all of the money I make from an incall to Nunnelly. Moore and King also give their money to Nunnelly from their dates.

j. Moore has driven me to outcalls in the Bay Area.

k. The laptops you found in the room belong to Moore and King. They use the laptops to post ads on Myredbook.com. Moore will sometimes post ads for me and sometimes I will post ads for Moore and King.

47. Nunnelly, King and Moore were all arrested on charges related to the pimping of a minor. They remain in custody on these charges.

48. When Nunnelly was contacted on June 17, 2013, he was found to be driving an Infiniti SUV, CA license 6WNE604. The SUV was found to be a rental car. King was the person who rented the vehicle. The vehicle was scheduled to be rented from June 14, 2013 to June 23, 2013.

16

49. Two ads were located on Myredbook.com for "M.S." and King in Anaheim, CA. One ad dated June 17, 2013 (ad 517957), contained photographs of "M.S." and King. A second ad dated June 17, 2013 (ad 517837), contained photographs of just King.

**STATEMENT OF PROBABLE CAUSE**

50. Based upon the evidence described above, I believed that SHARON KING has engaged in the sex trafficking of "M.S.," and participated in a sex trafficking venture with Nunnelly and Moore, in violation of 18 U.S.C. § 1591(a)(1) and (2), respectively. I believe that there is probable cause to issue an arrest warrant for King based upon the following particular facts:

    a. "M.S." described in her statement on June 17, 2013 that she had known King for approximately 7 months, a reasonable opportunity for King to observe "M.S.;" and that King knew she was a minor.

    b. "M.S." said that she gave money she earned during her time as a prostitute to King.

    c. "M.S." said that King provided security for her while she was on prostitution dates.

    d. "M.S." said that King posted ads of her on Myredbook.com.

    e. During the time that King has facilitated the sex trafficking of "M.S.", "M.S." engaged in acts of prostitution in the Eastern District of California and elsewhere.

    f. On June 14, 2013, King rented the vehicle that drove Nunnelly and "M.S." (along with Moore) from the Eastern District of California to Anaheim, where they continued to engage in prostitution.

51. Based upon the evidence described above, I believed that KIA MOORE has engaged in the sex trafficking of "M.S.," and participated in a sex trafficking venture with Nunnelly and King, in violation of 18 U.S.C. § 1591(a)(1) and (2), respectively. I believe that there is probable cause to issue an arrest warrant for King based upon

17

the following particular facts:

   a. On April 5, 2013, Moore sent a text to Nunnelly with the Myredbook user names for "M.S." These names were located written on a piece of paper in Nunnelly's room during a parole search of his address of record on April 16, 2013.
   b. "M.S." said that Moore had driven her to prostitution dates in the Bay Area. On April 16, 2013, Moore drove "M.S" to a prostitution date at a Sacramento motel in a car registered to Nunnelly.
   c. "M.S." and Moore have been together for at least three months, a reasonable opportunity for Moore to observe "M.S.;" and that Moore was aware of her age.
   d. "M.S." said that Moore had provided security for her while she was on prostitution dates.
   e. "M.S." said that Moore had posted prostitution advertisements of her on Myredbook.com.
   f. During the time that Moore has facilitated the sex trafficking of "M.S.", "M.S." engaged in acts of prostitution in the Eastern District of California and elsewhere.

///
///
///
///
///
///
///
///
///

# CONCLUSION

52. Based on the foregoing, there is probable cause to believe that SHARON KING and KIA MOORE has violated 18 U.S.C. § 1591(a)(1) and (a)(2), sex trafficking of minors, and participating in a sex trafficking venture, respectively.

*[signature: Gabriela Betance]*
GABRIELA BETANCE
Special Agent, FBI
Innocence Lost Task Force

Approved as to form.

*[signature: Kyle Reardon]*
KYLE REARDON
Assistant United States Attorney

Subscribed and sworn to me this **16th** day of August, 2013

*[signature: Dale A. Drozd]*
DALE A. DROZD
United States Magistrate Judge
Sacramento, California

19