1  BENJAMIN B. WAGNER
   United States Attorney
2  KYLE REARDON
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile:  (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7



**FILED**

AUG 1 9 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                DEPUTY CLERK

8          IN THE UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,              CASE NO. 2:13-CR-0309 JAM

                      Plaintiff,
12
13 v.                                     **PLEA AGREEMENT**

14 KIA MOORE,                             DATE: August 19, 2014
                                          TIME: 9:30 a.m.
                      Defendant.          COURT: Hon. John A. Mendez
15

16

17

18                I.    **INTRODUCTION**

19   A.    **Scope of Agreement**

20        The Information in this case charges the defendant with a violation of 18 U.S.C. § 4,

21 Misprision of a Felony Offense.  This document contains the complete plea agreement

22 between the United States Attorney's Office for the Eastern District of California (the

23 "government") and the defendant regarding this case.  This plea agreement is limited to

24 the United States Attorney's Office for the Eastern District of California and cannot bind

25 any other federal, state, or local prosecuting, administrative, or regulatory authorities.

26   B.    **Court Not a Party**

27        The Court is not a party to this plea agreement.  Sentencing is a matter solely

28 within the discretion of the Court, and the Court may take into consideration any and all

1

1 facts and circumstances concerning the criminal activities of defendant, including

2 activities that may not have been charged in the Information. The Court is under no

3 obligation to accept any recommendations made by the government, and the Court may in

4 its discretion impose any sentence it deems appropriate up to and including the statutory

5 maximum stated in this plea agreement.

6     If the Court should impose any sentence up to the maximum established by the

7 statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she

8 will remain bound to fulfill all of the obligations under this plea agreement. The

9 defendant understands that neither the prosecutor, defense counsel, nor the Court can

10 make a binding prediction or promise regarding the sentence she will receive.

11 <center>II.    **DEFENDANT'S OBLIGATIONS**</center>

12 **A.    Guilty Plea**

13     The defendant will plead guilty to Misprision of a Felony Offense in violation of 18

14 U.S.C. § 4. The defendant agrees that she is in fact guilty of these charges and that the

15 facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

16     The defendant agrees that this plea agreement will be filed with the Court and

17 become a part of the record of the case. The defendant understands and agrees that he

18 will not be allowed to withdraw her plea should the Court not follow the government's

19 sentencing recommendations.

20     The defendant agrees that the statements made by her in signing this Agreement,

21 including the factual admissions set forth in the factual basis, shall be admissible and

22 useable against the defendant by the United States in any subsequent criminal or civil

23 proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.

24 The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal

25 Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules

26 are inconsistent with this paragraph or with this Agreement generally.

27 ///

28 ///

<center>2</center>

### B.   Special Assessment

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### C.   Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government.  The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement.  The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws her plea, or tries to withdraw her plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections,

PLEA AGREEMENT
United States v. Kia Moore
2:13-CR-0309 JAM

1  motions, and defenses that the defendant might have to the government's decision to

2  exercise the options stated in the previous paragraph. Any prosecutions that are not time-

3  barred by the applicable statute of limitations as of the date of this plea agreement may be

4  commenced in accordance with this paragraph, notwithstanding the expiration of the

5  statute of limitations between the signing of this plea agreement and the commencement

6  of any such prosecutions. The defendant agrees not to raise any objections based on the

7  passage of time with respect to such counts including, but not limited to, any statutes of

8  limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of

9  the Sixth Amendment to any counts that were not time-barred as of the date of this plea

10  agreement.

11      In addition: (1) all statements made by the defendant to the government or other

12  designated law enforcement agents, or any testimony given by the defendant before a

13  grand jury or other tribunal, whether before or after this plea agreement, shall be

14  admissible in evidence in any criminal, civil, or administrative proceedings hereafter

15  brought against the defendant; and (2) the defendant shall assert no claim under the

16  United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

17  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that

18  statements made by the defendant before or after this plea agreement, or any leads

19  derived therefrom, should be suppressed. By signing this plea agreement, the defendant

20  waives any and all rights in the foregoing respects.

### III.    THE GOVERNMENT'S OBLIGATIONS

#### A.    Dismissals

23      The government agrees to move, at the time of sentencing, to dismiss without

24  prejudice the Indictment against the defendant. The government also agrees not to

25  reinstate any dismissed count except if this agreement is voided as set forth herein, or as

26  provided in II.C (Defendant's Violation of Plea Agreement), VI.B (Guidelines

27  Calculations), and VII.B (Waiver of Appeal) herein.

28

PLEA AGREEMENT
United States v. Kia Moore
2:13-CR-0309 JAM

**B.     Recommendations**

1.     Incarceration Range

The government will recommend that the defendant be sentenced to no more than the applicable guideline range for her offense, as determined by the Court.  In the event the defendant has served more time in custody than the top of the applicable guideline range, the United States will recommend a sentence of time-served.

2.     Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if she clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.     Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

**IV.     ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty:

As to Count One, Misprision of a Felony Offense in violation of 18 U.S.C. § 4:

PLEA AGREEMENT
United States v. Kia Moore
2:13-CR-0309 JAM

1.   The defendant had knowledge of the actual commission of a felony;

2.   That felony was cognizable by the courts of the United States;

3.   The defendant concealed her knowledge of that felony; and

4.   The defendant did not report that felony to some judge or other person in civil or military authority under the United States.

The defendant fully understands the nature and elements of the crimes charged in the Information to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V.   MAXIMUM SENTENCE

### A.   Maximum penalty

The maximum sentence that the Court can impose is three years of incarceration, a fine of $ 250,000, a one-year period of supervised release and a special assessment of $100. In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits as a result of her plea.   By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.   Violations of Supervised Release

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to one year of additional imprisonment.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing

PLEA AGREEMENT
United States v. Kia Moore
2:13-CR-0309 JAM

1  Guidelines and must take them into account when determining a final sentence. The

2  defendant understands that the Court will determine a non-binding and advisory

3  guideline sentencing range for this case pursuant to the Sentencing Guidelines and must

4  take them into account when determining a final sentence. The defendant further

5  understands that the Court will consider whether there is a basis for departure from the

6  guideline sentencing range (either above or below the guideline sentencing range) because

7  there exists an aggravating or mitigating circumstance of a kind, or to a degree, not

8  adequately taken into consideration by the Sentencing Commission in formulating the

9  Guidelines. The defendant further understands that the Court, after consultation and

10  consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in

11  light of the factors set forth in 18 U.S.C. § 3553(a).

12  **B.   Guideline Calculations**

13  The government and the defendant agree that the following is their present best

14  estimate of the sentencing guidelines variables. These estimates shall not be binding on

15  the Court, the Probation Office, or the parties:

16  1.   Offense Level:

17  (A) Base Offense Level: The base offense level is nine levels lower than the offense

18  level for the underlying offense, but in no case is lower than four, nor greater than 19.

19  U.S.S.G. § 2X4.1(a). In this case, the underlying offense is a violation of 18 U.S.C. 1589,

20  Forced Labor. The applicable guideline for that offense is found at U.S.S.G. § 2H4.1(a)(1)).

21  The base offense level is 22. Id. at (a)(1).

22  (B) Specific Offense Characteristics: One level is added because the victim was held

23  in a condition of involuntary servitude for between 30 and 180 days.

24  (C) Total Offense Level: Pursuant to U.S.S.G. § 2X4.1, the total offense level for the

25  violation of 18 U.S.C. § 4 is 14.

26  2.   Adjustments:

27  The defendant was a minor participant in the underlying offense. See U.S.S.G. §

28  3B1.2(b). As a result, two levels are subtracted from her offense level.

7

PLEA AGREEMENT
United States v. Kia Moore
2:13-CR-0309 JAM

1        3.      Chapter 3 Adjustments

2 (A) <u>Acceptance of Responsibility</u>: See paragraph III(B)(2) above.

3 (B) <u>Adjusted Offense Level</u>: The parties anticipate that the adjusted offense level

4 will be 10.

5        4.      <u>Criminal History:</u>

6 The defendant's criminal history will be determined by the United States Probation

7 Office.

8        5.      <u>Sentencing Range:</u>

9 The defendant's sentencing range will be determined by the United States

10 Probation Office.  The parties anticipate that the defendant's sentencing range will be 6 to

11 12 months.

12        6.      <u>Departures or Other Enhancements or Reductions:</u>

13 In the event that the United States Probation Officer does not apply a two-level

14 minor role reduction pursuant to U.S.S.G. § 3B1.2(b), the United States will move for a

15 two-level reduction in offense level pursuant to U.S.S.G. § 5H1.3 (Mental and Emotional

16 Condition).

17 Except as expressly provided within this written plea agreement, the parties

18 stipulate and agree that they will not seek or argue in support of any other specific offense

19 characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of

20 Responsibility"), or cross-references.  The defendant is permitted to make an argument in

21 mitigation pursuant to <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2005) and 18

22 U.S.C. § 3553(a).  The government may respond to that argument in mitigation, and to

23 present evidence in support of its response and requested sentence.

24 <div align="center">VII.    <b>WAIVERS</b></div>

25 **A.**     **Waiver of Constitutional Rights**

26 The defendant understands that by pleading guilty she is waiving the following

27 constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b)

28 to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if

1  necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-

2  examine witnesses against her; and (f) not to be compelled to incriminate herself.

3  ### B.   Waiver of Appeal and Collateral Attack

4  The defendant understands that the law gives the defendant a right to appeal her

5  guilty plea, conviction, and sentence.  The defendant agrees as part of her plea/pleas,

6  however, to give up the right to appeal the guilty plea, conviction, and the sentence

7  imposed in this case as long as the sentence does not exceed 12 months or time-served,

8  whichever is greater.  The defendant specifically gives up the right to appeal any order of

9  restitution the Court may impose.

10  Notwithstanding the defendant's waiver of appeal, the defendant will retain the

11  right to appeal if one of the following circumstances occurs: (1) the sentence imposed by

12  the District Court exceeds the statutory maximum; and/or (2) the government appeals the

13  sentence in the case.  The defendant understands that these circumstances occur

14  infrequently and that in almost all cases this Agreement constitutes a complete waiver of

15  all appellate rights.

16  In addition, regardless of the sentence the defendant receives, the defendant also

17  gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255

18  or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-

19  waivable claims.

20  Notwithstanding the agreement in paragraph III.A (Dismissals) above that the

21  government will move to dismiss counts against the defendant, if the defendant ever

22  attempts to vacate her plea, dismiss the underlying charges, or modify or set aside her

23  sentence on any of the counts to which she is pleading guilty, the government shall have

24  the rights set forth in paragraph II.C (Defendant's Violation of Plea Agreement) herein.

25  ### C.   Waiver of Attorneys' Fees and Costs

26  The defendant agrees to waive all rights under the "Hyde Amendment," Section

27  617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in

28  connection with the investigation and prosecution of all charges in the above-captioned

matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII.   ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.   APPROVALS AND SIGNATURES

### A.   Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: _____8/18/14_____    _____
CANDACE FRY
Counsel for Defendant

### B.   Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made

///

///

///

to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: _____8/18/14_____    _____

10

_KIA MOORE_, Defendant

## C.   Attorney for the United States

I accept and agree to this plea agreement on behalf of the government.

Dated: August 19, 2014                    BENJAMIN B. WAGNER
                                          United States Attorney

                              By:   /s/ KYLE REARDON
                                    KYLE REARDON
                                    Assistant United States
                                    Attorney

11

1

## EXHIBIT "A"
## Factual Basis for Plea

2

3   If this matter proceeded to trial, the United States would establish the following

4   facts beyond a reasonable doubt:

5   <u>The January 2013 Arrest of Keon Nunnelly</u>

6   On January 13, 2013, Sacramento Police stopped a car being driven by codefendant

7   Keon Nunnelly.  In the car was a 16-year-old female (hereinafter "Victim").  Officers

8   conducted a record check and learned that Nunnelly was on searchable parole with the

9   California Department of Corrections and Rehabilitation (CDCR).  Officers searched his

10   phone and found numerous text messages discussing prostitution.  Officers conducted a

11   record check on the phone number and located a prostitution ad on Myredbook.com; the

12   photos accompanying the ad were of the Victim.

13   Myredbook.com is an internet-based prostitution website.  Advertisements posted

14   on Myredbook.com are in and affecting interstate commerce.

15   <u>April 2013 Investigation of Victim's Myredbook Advertisements</u>

16   On April 8, 2013, Sacramento Police Detectives conducted a search on

17   Myredbook.com.  Detectives found a prostitution ad for the Victim on Myredbook.com

18   dated April 6, 2013. The ad had 5 photos of the Victim dressed in white lingerie. Eight

19   days later, detectives located a second ad dated April 14, 2013. The second ad had 6 photos

20   of the minor victim; four of the photos showed her dressed only in white underwear with

21   her breasts exposed.

22   Detectives contacted the phone number in the second ad and made a date with the

23   female who answered.  At the time of the date, officers observed Nunnelly's Lexus enter

24   the motel parking lot.  The Victim got out and went to the date, where she was arrested.

25   Police officers stopped the driver of the Lexus and identified her as the defendant.

26   A record check of the defendant showed her to be on state formal searchable probation.

27   Located on the defendant's phone was a contact number for Nunnelly.  A picture of

28   Nunnelly was associated with that saved contact.

PLEA AGREEMENT
United States v. Kia Moore
2:13-CR-0309 JAM

1 | Search of Nunnelly's Residence

2 A parole search was done at Nunnelly's residence. During this search, indicia of

3 prostitution, including handwritten text for ads, hand written notes for how to pose for

4 photographs, and motel room keys, were located. On one of the sheets of paper was

5 written "Dazzle Bunny7" and "Daisylove". Both of these were names used by the Victim in

6 her Myredbook.com prostitution ads.

7 | Identification of King's Involvement

8 On April 17, 2013, Sharon King and Nunnelly were stopped while King was driving

9 Nunnelly's car. Nunnelly was taken into custody on an outstanding warrant. King was

10 detained and found to be in possession of a cellular phone – this phone belonged to

11 Nunnelly. During a search of the vehicle, a second cellular phone was located in a purse

12 belonging to King. Located on the phones were contacts for Nunnelly and the defendant.

13 Checks for both of the phones linked them to Myredbook.com ads for both Moore and King.

14 | Anaheim Police Department Operation

15 On June 17, 2013, Sacramento detectives were searching Myredbook.com looking

16 for postings of the Victim. Detectives located an ad dated June 16, 2013, in Anaheim,

17 California for the Victim that contained 5 photos of the victim; in 4 of the photos she was

18 posing with King. Anaheim Police called the number on the ad and made a date with a

19 female. While doing surveillance, they observed Nunnelly and King on the second story

20 balcony of a local motel. Investigators later saw Nunnelly and King leave the Quality Inn

21 in a vehicle the defendant had rented in Sacramento, and travel to the site of the date.

22 King was arrested after agreeing with the undercover officer to engage in prostitution; she

23 had $1400 on her at the time of her arrest. Nunnelly was followed away from the motel

24 parking lot and stopped by marked units with the Anaheim Police Department. During a

25 search of the vehicle, $1896 was located in the center console of the car.

26 After detaining King and Nunnelly, investigators returned to the Quality Inn where

27 they had observed Nunnelly and King previously. They went to the room rented by King

28 and located the Victim on the balcony. The defendant was eventually located in the

PLEA AGREEMENT
United States v. Kia Moore
2:13-CR-0309 JAM

1 | parking lot to the west of the Quality Inn.

2 |      The defendant was aware that the Victim was being forced through means of force

3 | and threats of force to work as a prostitute for the defendant, and to provide him money

4 | from her labors.  Forced labor is a federal crime in violation of 18 U.S.C. § 1589.  The

5 | defendant concealed her knowledge of the felony that was being committed, and did not

6 | report to the authorities the fact that an individual was being forced to work.

7 |

8 |

9 |      I have read and carefully reviewed the Factual Basis for Plea with my attorney.  I

10 | agree that as it concerns my conduct it is correct.  I also agree that if this matter

11 | proceeded to trial, the United States could establish each of the facts contained within the

12 | Factual Basis for Plea beyond a reasonable doubt, and that those facts satisfy the

13 | elements of the offense to which I am pleading guilty.

14 | Dated:

15 |

16 | KIA MOORE
Defendant